IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AKHI RAHEEM MUHAMMAD | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GREGORY T. WEIS, ET AL. | : | NO. 08-3616 |

## MEMORANDUM

**Padova, J.**                                                                 **December 10, 2010**

*Pro se* Plaintiff Akhi Raheem Muhammad, a.k.a. Roy Sudduth, brought this action against more than 200 defendants, alleging violations of his constitutional rights as well as his rights under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794(a).  On August 17, 2009, we dismissed Plaintiff's ADA and RA claims against all private entity Defendants and some public entity Defendants; transferred his claims against the Court of Common Pleas of Allegheny County, the Pennsylvania Commonwealth Court, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court to the United States District Court for the Western District of Pennsylvania; and retained jurisdiction only over his ADA and RA claims against the Pennsylvania Department of Insurance ("Defendant").  On June 18, 2010, Defendant filed a Motion for Summary Judgment on Plaintiff's remaining claims.  For the reasons that follow, the Motion is granted.

## I.        FACTUAL BACKGROUND

Plaintiff is diabetic and has difficulty with his eyesight.  (Def.'s Statement of Material Facts ¶ 1; Pierce Decl. Attach. C at 3.)  On November 29, 2006, Plaintiff's automobile insurance provider, Geico, notified Plaintiff that it was canceling his insurance policy because his driver's license had

been suspended.  (Id. Attach. A.)  The Notice informed Plaintiff that he could appeal Geico's decision by signing the Notice and sending it to Defendant.  (Id.)  Defendant received the Notice, which Plaintiff had signed, on December 11, 2006.  (Id.)  The matter was assigned to Consumer Services Investigator ("CSI") Geraldine Moten.  (Id. ¶ 14.)

On January 18, 2007, CSI Moten sent Plaintiff an Investigative Report ("the report"), concluding that his insurance had been properly canceled and informing him that he could request an administrative hearing within ten days of receiving the report.  (Id. Attach. E.)  CSI Moten mailed the report to Plaintiff using the zip code 90213-2251, which had appeared as Plaintiff's zip code on the Notice of Cancellation.  (Id. ¶¶ 21-22 and Attachs. A, E.)  On February 14, 2007, the report was returned to Defendant by the United States Postal Service ("USPS"), with the notation that it was "not deliverable as addressed."  (Id. ¶ 23 and Attach. F.)

On February 21, 2007, Plaintiff called CSI Moten, stating that he had not received the report. (Id. ¶ 24.)  When CSI Moten explained that the report had been returned to Defendant, Plaintiff stated that his zip code was 90210.  (Id. ¶ 24 and Attach. C at 3.)  CSI Moten resent the report, using the zip code 90210.  (Id.)  The next day, Plaintiff called CSI Moten again, and requested that she fax him a copy of the report.  (Id. ¶ 25 and Attach. C at 2.)  CSI Moten faxed the report to the number Plaintiff provided.  (Id. ¶ 26, Attach. C at 2, and Attach. G.)  After he received the fax, Plaintiff requested an administrative hearing, preferably in Philadelphia, PA.  (Id. Attach. H.)

On March 13, 2007, a Hearing Administrator mailed a Notice of Hearing to Plaintiff using the zip code 90213-2251, the zip code that appeared on the Notice of Cancellation.  (Martin Decl. ¶¶ 7-8 and Attach. A.)  The Notice of Hearing indicated that Plaintiff's administrative hearing was scheduled for May 3, 2007.  (Id.)  USPS subsequently returned the Notice of Hearing to Defendant,

by USPS with the notation that it was "unclaimed."  (Id. ¶ 14 and Attach. G.)

On April 27, 2007, Plaintiff called Assistant Hearings Administrator ("AHA") Jean Martin and told her that he had not received the notice of his hearing.  (Id. ¶ 10.)  He was unaware that the hearing had been scheduled for May 3, 2007, and asked that it be continued.  (Id.) AHA Martin advised Plaintiff to put his request in writing and fax it to her. (Id.)

On May 1, 2007, Plaintiff faxed a letter ("the May 1 letter") to AHA Martin asking that the May 3, 2007 hearing be continued.  (Id. Attach. D.)  The letter stated that Plaintiff had not received the March 13 Notice of Hearing and that he only became aware that his administrative hearing was scheduled for May 3 during the April 27 phone call.  (Id.)  In the May 1 letter, Plaintiff also made a request for reasonable accommodation of his visual impairment.  (Id.)  Specifically, Plaintiff "request[ed] a 'reasonable accommodation', pursuant to the [ADA], in the form of an 'auxiliary aide/equipment' which would enable [him] and members of [his] 'protected class' to be able to view 'standardized print'."  (Id. (emphases omitted).)  Plaintiff further specified that "[t]his 'reasonable accommodation' should be in the form of a 'CCTV; CRTV or an overhead projector and projection screen'."  (Id. (emphases omitted).) Defendant received the May 1 letter.  (Id. ¶ 11 and Attach. D.)

On May 2, 2007, the Hearing Examiner granted Plaintiff's request for a continuance and rescheduled Plaintiff's administrative hearing for June 18, 2007, in Philadelphia.  (Id. Attach. E.) AHA Martin mailed a copy of the scheduling order to Plaintiff, using the zip code 90210, and faxed a copy to Plaintiff using the number Plaintiff provided to CSI Moten.  (Id. ¶ 13 and Attach. F; Pierce Decl. ¶ 25.)

On June 18, 2007, Defendant held Plaintiff's first administrative hearing ("the June hearing").  At the June hearing, Hearing Officer ("HO") Nowak acknowledged that Plaintiff had

made a request for accommodations in May. (6/18/07 Hrg. Tr. at 12.) Referring to Plaintiff's request for a CCTV, a CRTV, or an overhead projector, HO Nowak stated that "a search has been made throughout this building for that equipment, and that equipment is not in this building. There is no such thing available." (Id. at 7.) Later, she reiterated that "a search was made to see if any of this equipment was available, and it's not." (Id. at 12.) She further stated that "everybody in Harrisburg was looking mightily for this equipment, that it doesn't – there is none. I don't know if there's – nobody uses overhead projectors anymore, we just don't." (Id. at 16.) HO Nowak did "recognize and agree completely that [Plaintiff was] entitled to reasonable accommodation," and offered Plaintiff "the option of providing someone to read for [him]." (Id. at 9; 6.) She also offered to read any documents being discussed to Plaintiff herself. (Id. at 6.) As an additional option, she offered to continue the hearing. (Id. at 6-7.) Plaintiff stated that he would find a reader to be an insufficient accommodation and requested a continuance. (Id. at 14-15; 7.) HO Nowak continued the hearing at Plaintiff's request. (Id. at 12.)

On June 25, 2007, HO Nowak rescheduled Plaintiff's hearing for September 18, 2007 ("the September hearing"). (Martin Decl. ¶ 16 and Attach. H.) That same day, AHA Martin mailed a copy of the rescheduling order to Plaintiff, using the zip code 90210. (Id. ¶ 17 and Attach. I.)

Plaintiff did not appear at the September hearing. (9/18/07 Hrg. Tr. at 7.) Approximately 27 minutes after the scheduled start of the hearing, Chief Hearing Officer ("CHO") James Johnson went on the record and stated that Plaintiff had not appeared. (Id.) CHO Johnson further stated that he had checked in with Defendant's offices in Philadelphia and Harrisburg, and Plaintiff had not contacted either office to explain his non-appearance. (Id.) CHO Johnson also stated that, pursuant to Plaintiff's request for accommodation, Defendant had provided an overhead projector, had made

transparencies of all the docket exhibits and possible Geico exhibits for overhead projection, and was prepared to make transparencies of Plaintiff's exhibits as well. (Id. at 8.) The Geico representative moved for dismissal with prejudice in light of Plaintiff's non-appearance, and CHO Johnson granted the motion. (Id. at 8-9.)

On September 21, 2007, CHO Johnson issued a written order dismissing Plaintiff's claim with prejudice for failure to prosecute ("the September 21 order"). (Martin Decl. ¶ 19 and Attach. J.) That same day, AHA Martin mailed a copy of the September 21 order to Plaintiff, using the zip code 90210. (Id. ¶ 20 and Attach. K.)

On October 29, 2007, Plaintiff sent Defendant a "Motion to Vacate September 21, 2007 Ex-Parte Order of Court." (Pl. Ex. 1.) Plaintiff accused Defendant of "deliberately fail[ing] to notif[y] [Plaintiff] of [the] September 18, 2007 administrative hearing." (Id. ¶ 3 (emphases omitted).) He alleged that "[b]ecause of [his] disability and race, he was denied his United States constitutional rights of due process and equal protection, since the aforementioned Pennsylvania state agency had conducted an ex-parte hearing." (Id. ¶ 5 (emphases omitted).) He further accused Defendant of violating his equal protection and due process right by failing to provide reasonable accommodations at the June hearing. (Id. ¶ 4.) Plaintiff demanded that Defendant vacate the September 21 order and schedule a new hearing. (Id. ¶ 7 and following unnumbered ¶.)

On November 5, 2007, Acting Insurance Commissioner ("AIC") Joel Ario issued an order denying Plaintiff's Motion because the time to request reconsideration of the order had expired. (Martin Decl. Attach. M.) AIC Ario further stated that notice of the time and place of the September hearing had been mailed to Plaintiff's address of record and had not been returned by USPS. (Id.)

On November 20, 2007, Plaintiff received, by fax, a copy of the June 25, 2007 order

rescheduling Plaintiff's administrative hearing for September 18, 2007. (Pl. Ex. F.)

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). That is, summary judgment is appropriate if the non-moving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

"'While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a

scintilla.'" Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 270 (3d Cir. 2007) (quoting

Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005)). "Evidence that is merely

colorable or not significantly probative is insufficient to create a genuine issue of material fact for

trial." West v. Lincoln Benefit Life Co., 509 F.3d 160, 172 (3d Cir. 2007) (citing Anderson, 477

U.S. at 248, and El v. Southeastern Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007)).

## III.    DISCUSSION

Plaintiff asserts discrimination claims pursuant to the ADA and the RA in connection with

both the June and September hearings.  He argues that Defendant violated the ADA and the RA in

connection with the June hearing by failing to provide a CCTV, a CRTV, or an overhead projector.

He argues that Defendant violated the same statutes in connection with September hearing by failing

to notify him of the hearing,[1] and by ruling against him when he failed to appear.  Defendant has

moved for summary judgment on all of Plaintiff's ADA and RA claims, arguing that the undisputed

record evidence establishes that Defendant is entitled to judgment as a matter of law because

Plaintiff cannot prove that he was excluded from participation in, denied the benefits of, or subject

to discrimination under Defendant's program.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason

of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42

---

[1]In the Second Amended Complaint, Plaintiff alleged that Defendant failed to mail the appropriate notice to his permanent address.  (Second Am. Compl. ¶ 91.)  The evidence, however, establishes that Defendant mailed the notice to the address listed in Plaintiff's Complaint.  (Martin Decl. ¶ 17 and Attach. I.)  At summary judgment, Plaintiff argues that Defendant knew that Plaintiff had difficulty receiving mail at that address, that Defendant had agreed to fax all further notices to Plaintiff, and that Defendant violated that agreement by failing to fax him the scheduling notice for the September hearing.  (Pl.'s Resp. ¶ 8(F).)

U.S.C. § 12132.  Similarly, section 504 of the RA provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a).  "Given their similar language and related purposes, Congress has directed that Title II of the ADA and Section 504 of the RA be construed and applied consistently."  Spieth v. Bucks Cnty. Hous. Auth., 594 F. Supp. 2d 584, 590 (E.D. Pa. 2009) (citing Yeskey v. Pa. Dep't of Corr., 118 F.3d 168, 170 (3d Cir.1997)).  Accordingly, to prevail on a claim of discrimination under either the ADA or the RA, the plaintiff must show that he has been "excluded from participation in, . . . denied the benefits of, or . . . subjected to discrimination under [Defendant's] program solely because of [his] disability." Spieth, 594 F. Supp. 2d at 591 (citing Jones v. City of Monroe, 341 F.3d 474, 477 (6th Cir. 2003), and Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003)); see also Nathanson v. Med. Coll. of Pa., 926 F.2d 1368, 1380 (3d Cir. 1991) (quoting Strathie v. Dep't of Transp., 716 F.2d 227, 230 (3d Cir. 1983)).

A.     The June Hearing

Plaintiff claims that by failing to provide a CCTV, a CRTV, or an overhead projector at the June hearing Defendant excluded Plaintiff from, denied Plaintiff the benefits of, or discriminated against Plaintiff under Defendant's program, which provides an appeals process for the cancellation of automobile insurance.  Defendant moves for summary judgment with respect to this claim.

Defendant's obligations with respect to individuals with disabilities are addressed in federal regulations, which require "certain pro-active measures to avoid the discrimination proscribed by Title II."  Chisolm v. McManimon, 275 F.3d 315, 324-25 (3d Cir. 2001) (citing 42 U.S.C. §

12134(a) and 28 C.F.R. §§ 35.101 et seq. (1991)).  These regulations "are given controlling weight," unless they are "'arbitrary, capricious or manifestly contrary to the statute.'"  Liberty Res., Inc. v. Phila. Housing Auth., 528 F. Supp. 2d 553, 564 n.17 (E.D. Pa. 2007) (quoting Helen L. v. DiDario, 46 F.3d 325, 332 (3d Cir. 1995)).  Among other things, the regulations require that public entities "shall take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others."  28 C.F.R. § 35.160(a).  They further require public entities to " furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity."  28 C.F.R. § 35.160(b)(1).  "In determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the requests of the individual with disabilities."  28 C.F.R. § 35.160(b)(2).  The Department of Justice further instructs that "the requirement for consultation and primary consideration to the individual's expressed choice applies to information provided in visual formats . . . ."  *Americans with Disabilities Act, Title II Technical Assistance Manual* (1993) ("Technical Assistance Manual") § II-7.1100, *available at* http://www.ada.gov/taman2.html.

Here, the undisputed evidence shows that Defendant did give primary consideration to Plaintiff's request for a CCTV, a CRTV, or an overhead projector.  Prior to the hearing, Defendant's employees searched throughout the State Office Building in Philadelphia, and "looked mightily" in their offices in Harrisburg, attempting to find one of the devices Plaintiff requested.  (6/18/07 Hrg. Tr. at 7, 12, 16.)  Moreover, Defendant ultimately offered Plaintiff a reader (6/18/07 Hrg. Tr. at 6), an accommodation that the regulations specifically authorize, see 28 C.F.R. § 35.104 (stating that "[a]uxiliary aids and services includes . . . [q]ualified readers . . . ."); see also Technical Assistance

Manual § II-7.1100 ("For individuals with vision impairments, appropriate auxiliary aids include readers . . . ."). While Plaintiff had requested alternative aids, a public entity has no obligation to provide a specific requested aid if "another effective means of communication exists." Chisolm, 275 F.3d at 326 n.10 (emphasis omitted) (quoting 28 C.F.R. Pt. 35, App. A § 35.160).

Furthermore, Defendant's failure to provide the specific auxiliary aids that Plaintiff requested did not result in Plaintiff's unequal participation in Defendant's insurance cancellation appeal program, because Defendant merely continued Plaintiff's hearing. (6/18/07 Hrg. Tr. at 6-7, 12.) Given this result, in order to prevail on his discrimination claim in connection with the June hearing, Plaintiff would have to show that by continuing his hearing Defendant excluded him from the program, denied him the benefits of the program, or discriminated against him under the program. He cannot do so here, where the undisputed evidence shows that Plaintiff himself requested the continuance to give Defendant a chance to find the equipment Plaintiff requested, and that Defendant subsequently found and provided the equipment Plaintiff requested. (Id. at 7; 9/18/07 Hrg. Tr. at 8.)

Accordingly, the undisputed evidence demonstrates that Defendant gave primary consideration to Plaintiff's requested auxiliary aids and that Defendant provided Plaintiff with an appropriate auxiliary aid at the June hearing. Moreover, we conclude that Defendant's decision to continue the hearing at Plaintiff's request, rather than proceed under conditions that Plaintiff opposed, in no way excluded Plaintiff from the program, denied him the benefits of the program, or discriminated against him. Consequently, we conclude that there are no genuine issues of fact material to the resolution of Plaintiff's ADA and RA claims in connection with the June hearing and Defendant is entitled to judgment as a matter of law. Therefore, we grant Defendant's Motion for Summary Judgment as to Plaintiff's ADA and RA claims in connection with the June hearing.

B.    The September Hearing

Plaintiff claims that Defendant violated the ADA and the RA in connection with the September hearing by failing either to fax him the scheduling notice or to send him the notice by certified mail, and by ruling against him when he failed to appear.  Defendant argues that it is entitled to summary judgment on this claim because Plaintiff's "inability to participate in the [September] hearing is attributed to his alleged lack of knowledge of the date and time of the hearing, and not any disability."  (Def.'s Mem. at 5.)  In other words, Defendant argues that it is entitled to judgment as a matter of law because, even if Defendant was obligated to send his scheduling notice by fax or by certified mail, Plaintiff has provided no evidence that its failure to do so was causally related to Plaintiff's disability.

We agree with Defendant.  Even if Defendant breached an obligation to send scheduling notices by fax or by certified mail,[2] mere failure to accommodate Plaintiff's difficulty receiving mail does not constitute disability discrimination simply because Plaintiff is disabled.  See Andrew M. v. Del. Cnty. Office of Mental Health & Mental Retardation, 490 F.3d 337, 350 (3d Cir. 2007) ("A plaintiff cannot make out an RA claim simply by proving (1) that he was denied some service and

_____

[2]We note that the Pennsylvania Administrative Code states that a "person communicating [with a state agency] shall state his address . . . and how response should be sent to him if not by *first class mail*."  1 Pa. Code § 31.5 (emphasis added).  Plaintiff has provided no evidence that he requested communication by certified mail.  Plaintiff also has provided no evidence that he made a general request that all future documents be sent to him by fax.  The record shows that Plaintiff made one specific request that an individual document be faxed to him (Pierce Decl. ¶ 25 and Attach. C at 2), and that Defendant on its own initiative faxed Plaintiff two other documents, both of which it also mailed (Id. ¶ 25; Martin Decl. ¶ 13 and Attach. F; Pl. Ex. F; Martin Decl. ¶ 17 and Attach. I.).  Plaintiff appears to argue that we should imply Defendant's agreement to send correspondence by fax from Defendant's knowledge that Plaintiff had difficulty receiving mail.  (Pl.'s Mem. ¶ 8(F).)  However, there is no evidence in the record that Defendant knew Plaintiff had difficulty receiving mail at his 90210 address.

(2) he is disabled. The state must have failed to provide the service for the sole reason that the [plaintiff] is disabled.") (citation omitted); c.f. also Spieth, 594 F. Supp. 2d at 591 (concluding that plaintiff did not state a claim under the ADA or the RA where she claimed that public housing program violated HUD regulations in refusing to approve higher than normal rental rates because plaintiff did not "contend . . . that she was denied these benefits or discriminated against *because of* her disability"). Rather, in order to prevail on his ADA and RA claims, plaintiff must submit record evidence to show that Defendant did not accommodate Plaintiff's difficulty receiving mail specifically because he is disabled. Plaintiff has submitted no such evidence.

Accordingly, we conclude that Plaintiff has not provided evidence on which a trier of fact could conclude that Defendant's ex parte order dismissing Plaintiff's claim was causally related to Plaintiff's disability. As such, there are no genuine issues of fact material to the resolution of Plaintiff's discrimination claims in connection with the September hearing and Defendant is entitled to judgment as a matter of law. Therefore, we grant Defendant's Motion for Summary Judgment as to Plaintiff's ADA and RA claims in connection with the September hearing.

## IV. CONCLUSION

For the reasons stated above, we conclude that Defendant is entitled to judgment in its favor as to all of Plaintiff's ADA and RA claims with respect to the June and September hearings. As these are Plaintiff's only remaining claims in this case,[3] we grant Defendant's Motion for Summary

---

[3]In his Response to Defendant's Motion for Summary Judgment, Plaintiff for the first time attempts to assert retaliation claims pursuant to the ADA and the RA in connection with the September hearing. Plaintiff argues that Defendant "intentionally and illegally retaliated against [him] for filing complaints against them with regards to violating the [ADA]; the [RA;] and the Pennsylvania Human Relations Act, by deliberately and intentionally faxing notices of the September . . . hearing date five months after their June 25, 2007 administrative order." (Pl.'s Resp. ¶ 8(H) (emphases omitted).) The Second Amended Complaint did not assert retaliation claims

Judgment in its entirety and enter judgment in favor of Defendant and against Plaintiff.

An appropriate order follows.

BY THE COURT:

/s/ John R. Padova
_____

John R. Padova, J.

---

against Defendant, and Plaintiff has not mentioned such claims in any prior briefing. Moreover, the record before us does not support such a claim. In order to show that Defendant's fax constituted retaliation, Plaintiff would have to show that the fax was "materially adverse, which . . . means it well might have dissuaded a reasonable [person] from making or supporting a charge of discrimination." <u>Warshaw v. Concentra Health Servs.</u>, 719 F. Supp. 2d 484, 500 (E.D. Pa. 2010) (first alteration in original) (citations omitted). Plaintiff has provided no argument, evidence, or citations to establish that the fax was a materially adverse action. We conclude that no reasonable jury could find that a state agency's decision to fax a scheduling notice it had previously mailed would dissuade a reasonable person from pursuing a disability discrimination complaint.

Plaintiff may also be arguing that Defendant's failure to fax the scheduling notice prior to the September hearing constituted retaliation. However, it is axiomatic that, in a retaliation claim, the allegedly retaliatory action must occur "either after or contemporaneous with the . . . protected activity." <u>Fogleman v. Mercy Hosp., Inc.</u>, 283 F.3d 561, 567 (3d Cir. 2002). Plaintiff has provided no evidence that he filed disability discrimination complaints against Defendant prior to the September hearing.